## LEPINE v. LAKE CHAMPLAIN TRANSP. CO.

(District Court, N. D. New York. June 19, 1918.)

TOWAGE ⬡12(2)—ACCIDENTS—FAULT.

Where a canal boat, with two others behind it, which was in tow of a single tug, was injured at a point where the canal crossed the Hudson river, *held*, that the master of the tug was negligent in attempting to tow the three vessels through the cross-current made by the river, and that the owner of the canal boat was also negligent in failing to use adequate care to keep his boat away from the pier with which it collided; hence damages should be divided.

In Admiralty. Libel by Ralph Lepine against the Lake Champlain Transportation Company for damages claimed to have been sustained by a canal boat through the fault of a tug owned by the respondent. Damages divided.

Foley & Martin, of New York City, for libelant.
O. A. Dennis, of Whitehall, N. Y., for respondent.

RAY, District Judge. On the morning of May 7, 1915, the respondent's tug Waterford took in tow the boats Brid S. Coler, Alice Florence May, and Frank W. Myers, lashed firmly together in that order; the Brid S. Coler being ahead. This tow was proceeding northerly in the so-called "Northern Canal." The steering lines of this first boat ran to the Alice Florence May, and its steering lines ran to the Frank W. Myers. This third boat had no steersman, but the others did. Capt. Henry Fleury, a licensed pilot and master, was in charge of the tug. At the point where this accident happened the Hudson river and canal come together, and there is a current below the dam in the river, which is a short distance above and northwesterly of the point in question, and this current runs into and across the canal. There is a pier or wall in the easterly side of the canal, with openings for the water to pass, and also a pier or wall on the westerly side; both piers extending into the water and running north and south, but the pier on the west side does not extend as far south as the other. The result is that boats towed northerly in this canal must cross this current westerly of the easterly pier and a short distance below the westerly pier. If carried by the current too far to the east, the boats are liable to strike the southerly point of the east pier and suffer damage; and if, in avoiding that danger, the boats proceeding north are carried too far to the west, they are liable to strike the southerly point of the west pier, which is what happened in this case. Just how much force the current has at a given time it is not possible or practicable to know, and hence the effect of this current on a tow is uncertain.

The situation and conditions call for great and even extraordinary care and caution, and the exercise of good judgment on the part of both the one controlling and managing the tug and the steersmen on the boats following. The tug is out of the current when the boats, one or more, are in it, and the distance between the piers is only 100 feet, thus limiting the space in which the tug can move from west to east.

For about 100 feet southerly from the point of this west pier there is slack water. It is evident that a tow proceeding northerly in the canal must go into and cross this current, which strikes it diagonally, flowing from the northwest to the southeast. It is also evident that to safely take a tow into and across this current it must in the beginning be headed into the current to avoid the point of the east pier; but it cannot be kept there for any great length of time headed up the current, as it must be taken across the current and into the canal between the piers, and with three boats following and drawn by a tug it is evident that the head boat will get into the slack water mentioned while the others and following boats are still in and affected by the current. It is evident that the tug can take care of itself, and it is also evident that under such conditions and circumstances the tug must have the careful and intelligent aid of the steersmen on the boats, in order that they may avoid, first, the southerly end of the east pier, and, secondly and mainly, the southerly end of this west pier. If the tug goes into the current, and heads up the same to the northwest, and continues on, it will go to the west of the west pier; and hence it must change its course to the easterly, and then northerly, and as the boats normally follow the tug they proceed in the same direction, but this change of direction of the boats is not instantaneous, unless the line is so short and kept so taut that tug and boats move as one body.

The evidence shows plainly enough that on the occasion in question here the owner of the boats chose to proceed with the three boats in tow lashed together as mentioned, and that both he and the captain of the tug knew it was risky and dangerous to do so. It is also shown to my satisfaction that the captain of the tug, knowing this fact, and also knowing of this current and of these piers, headed to the current as he came to it, and proceeded northerly on the westerly side of the canal, to avoid bringing the boats in contact with the easterly pier, and then changed direction to the easterly and north, as he must do, would he enter the canal between the piers and take the tow with him. It is claimed that a kink was formed in this triple tow as it entered, or when it was within the influence of the current; and I find that such a kink did occur—that is, the boats were not so rigidly lashed to each other that they kept in a straight line. Moved ahead by the pull of the tug, and retarded and influenced by the kink and current together, it is evident that the head boat did not follow in the wake of the tug, but that its head was thrown or kept too far to the west by these influences and negligent steering, and hence came forcibly in contact with the point of the westerly pier, causing the damage complained of.

If the captain of the tug had been able to foresee the kink in the triple tow, and accurately measure the influence of the current on a tow in such condition, he probably could and would have so managed as to avoid this collision, and it would have been his duty to do so. But I think and find he did the best he could under the circumstances, after taking the two into the current, acting on the knowledge he had and with which he is chargeable, and that he is not chargeable with negligence or omission of duty, unless it be that it was negligence on

his part to attempt to take a triple tow, formed and lashed as this was, into and across the current referred to. If the last or third boat in this tow had been dropped behind as the tug neared the current or easterly pier, it is probable that no kink would have been formed, and that the accident and collision with the west pier would not have occurred. Both the master of the tug and the owner of the boats knew of this current and of these piers, and the dangers incident to navigation at this point, and of the dangers of attempting to take such a tow through. Both knew of the make-up of the tow, as described. I think the master should have caused the last boat to be dropped behind, and that he omitted a duty he owed when he failed so to do, and that such negligence contributed to the injury. I also think the owner of the injured boat was negligent in this matter, and also negligent in steering after entering the current; that is, he trusted to the supposition that the tug itself would avoid the southerly point of the west pier, as it did, and that the tow would follow the tug, and consequently he exercised no adequate or proper care, and made no proper effort to keep his boat away from contact with such pier, and the collision and damage followed.

I hold and find that both were at fault, and that the combined negligence of the two produced the accident and injury. The damage should be apportioned equally.